OPINION
Tammy Walker, mother of Amie Caldwell and Joshua Caldwell, is appealing through her appointed attorney, from the decision of the trial court, the Common Pleas Court of Montgomery County, Ohio, Juvenile Division, terminating her parental rights as well as those of the alleged father, Gregory Caldwell, and granting the motion of the Children Services Board for permanent custody of both children to it. Separate motions for permanent custody of the children were filed at the trial court and given separate case numbers, but the trial court considered both cases together in a single hearing and on appeal they have been treated as consolidated for purposes of appeal.
The facts of the two cases and the trial court's rationale for its decision are set forth in its entry, which was identical in both cases, as follows:
 These matters came on for a hearing on April 27, 1999 pursuant to a motion for permanent custody filed by the Children Services Board.
 Present for the hearing were Ms. Jenifer Wilhelm, the assistant prosecuting attorney representing Children Services Board; Ms. Kay Rosario, attorney representing the alleged father, Gregory Caldwell; Dave Fuschman, attorney representing the mother in this matter, Tammy Walker.
 For the record let it be known that Tammy Walker, the mother, was not present. It was also indicated that no one has had any contact with her since June 16, 1997. Service in this matter was made by publication. Also the alleged father, Gregory Caldwell, was not present. There has only been one contact with him and he indicated that he was not the father of the children. He also received service by publication and was not present for the hearing.
 The facts of this case are these: The two children, Amie and Joshua, have been in care since 1994. The last time that the mother, Tammy Walker, had any contact with the children was in September, 1997 when she had a visit with them. The agency has indicated they have not had any contact with her since that period of time. At one point in time there was a warrant for her arrest which was issued for the mother and this was out of the Dayton Municipal Court, however there was no address given and it is unknown whether or not the warrant was served.
 The agency has attempted to get the mother to have a psychological evaluation. The mother did not complete it nor did she appear for the appointments. She has no permanent address. It is known that she was receiving some public assistance. She did not attend parenting classes and generally the mother has not had any contact, has failed to show the requisite amount of care for her children and generally has done nothing in order to show that she has an interest in her children or wants to be involved with them.
 As indicated, the alleged father, Gregory Caldwell, has indicated that he is not the father of the children and does not want to be contacted concerning this matter.
FINDINGS OF THE COURT:
 This Court, based upon the information that has been received in this matter, will find that the mother has abandoned the children and that the mother is not able to provide adequate parental care for the children within a reasonable period of time.
 The evidence is clear that the mother has had no contact, has not attempted to contact the children or the agency. Her whereabouts are unknown. There is also some indication that the mother has been arrested and has spent some time in the workhouse as a result of her behavior. It is alleged that the mother has some alcohol and drug problems and also may have been prostituting. At any rate the agency has had very little contact with the mother and the mother has not contacted the agency in order to provide for the children.
 Based upon this information this Court will find that the children are in need of care, that the mother has not provided adequate parental care for the children and that it is in the best interests of the children for the parents' parental rights to be terminated and permanent custody granted to the Montgomery County Children Services Board.
 Concerning the alleged father, Mr. Gregory Caldwell, this Court also finds that he has abandoned the children, has not provided adequate parental care for the children and is not able to provide adequate parental care for the children within a reasonable period of time and it is in the best interests of the children that they be placed in the permanent custody of the Children Services Board.
 Therefore this Court terminates the parental rights and all residual rights of both the mother, Tammy Walker, and the father, Gregory Caldwell, and grants the motion for permanent custody to the Children Services Board.
 The Dayton schools are responsible for the education of the children. The annual review date in this matter will be heard on March 22, 2000 at 10:00 a.m. before the Citizens Review Board. The Court also adopts the case plan in this matter and incorporates it and makes it part of this record.
On appeal, the attorney for the mother sets forth the following sole assignment of error:
 THE TRIAL COURT'S FINDING THAT THE CHILD IS ABANDONED AND THAT THE PARENT CANNOT BE LOCATED IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
Pursuant to statute, a juvenile court may grant permanent custody of a child to a movant if the court finds "by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that [among other possible findings] . . . the child is abandoned and the parents cannot be located." R.C. 2151.414(B)(2). We first note that "[i]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important." Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124
(citations omitted). The Supreme Court in Reynolds further quoted from previous decisions, that:
 "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. Trickey v. Trickey (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276"
We further note that whether a parent relinquishes his rights to custody is a factual termination to be made by the trier of fact and should not be disturbed if supported by some reliable, credible evidence. Masitto v. Masitto (1986), 22 Ohio St.3d 63,66.
It would be difficult to imagine a more clear case of abandonment then the one presented by the facts in this case. Not even the appointed attorney has had contact with the mother since 1997 and there has been no contact with the alleged father since 1996. We use the term "alleged" because he told the agency that he doubted that he was the father. Both the mother and the alleged father seem to have taken deliberate actions to hide themselves from the agency as well as other law enforcement officials. At the hearing, the case worker testified as follows to one encounter with the mother after September, 1997, which was the date of her last visit to the children, as follows:
 Q. Did you have contact with mother after she stopped visiting in September of 1997?
 A. I saw mother in the summer to the fall of `98, I just ran into her at a gas station.
 Q. Okay, and what was the nature of your conversation at that time?
 A. I asked her where she had been and she said just around and that was basically it.
 Q. Did she provide you with any kind of address or way to contact her?
A. No.
Q. Did she ask you about the welfare of the children?
A. No.
 Q. After that meeting did she call the agency to try to make a contact with you that you're aware of?
A. No.
 Q. Have you spoken to her since that time in summer to fall of 1998?
A. No.
Tr. 20-21.
The caseworker testified to numerous attempts to locate both the mother and the father using all kinds of resources such as the phone directory, Human Services Department, Municipal Court Records, and the relatives, all in vain. We find that the decision of the trial court was clearly correct and more than supported by competent, credible evidence. The Supreme Court has even found an abandonment of a child to have occurred by the father when the father even made some visitations during the course of the child's custody in the hands of another couple.Reynolds v. Goll, supra. Not even those mitigating circumstances are present here. The assignment of error is overruled and the judgment is affirmed.
BROGAN, J. and KERNS, J., concur.
(Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District sitting by assignment of the Chief Justice of the Supreme Court of Ohio).